**MITCHELL ENGINEERING COMPANY DIVISION OF CECO**

v.

**Charles E. MELTON et al.**

Supreme Court of Tennessee.

April 3, 1972.

William H. Bryson, Bryson & Bryson, Woodbury, for complainant.

Dewey Pedigo, Nashville, J. B. Melton, Woodbury, for defendants.

OPINION

McCANLESS, Justice.

Mitchell Engineering Company brought its suit against Charles E. Melton and his

wife, Sibyl B. Melton, and Sterling A. Harrell and his wife, Geneva P. Harrell, to enforce a furnisher's lien on a lot in Cannon County owned by the defendants and described in the bill.

The complainant, a Mississippi corporation whose principal place of business is in Columbus, Mississippi, averred that the defendants had contracted with Hoffco Contractors, Inc., of Nashville, for the erection of a commercial building on their land; and that Hoffco had contracted with the complainant to furnish steel, siding, and other materials in the construction of the building in the amount of $14,151.55 for which it had not been paid.

The complainant charged that it has a lien on the complainants' real estate. It recited the filing of a notice of such lien in the Register's office of Cannon County and the mailing of a copy of it to the defendant, Charles E. Melton.

The defendants by their answer admitted their contract with Hoffco and that Hoffco had bought materials for the building from the complainant. They denied, however, that the complainant is entitled to a lien on their property, asserting that because of its actions it had waived its right to a lien and is estopped from claiming it.

The defendants charged that the field representative of the complainant, Jimmy Ray, in response to an inquiry of him by the defendant, Charles E. Melton, who acted for all the defendants in the construction of the building, had told Melton that he did not know whether Mitchell Engineering Company had been paid or not but that Mitchell Engineering Company was not looking to the defendants for its money. The defendants further averred that on December 13, 1969, they owed Hoffco Contractors, Inc., $20,000.00, "which could have and would have been used in the payment of materials that Hoffco Contractors, Inc., owed to Mitchell Engineering Company, but relying on the assurance and instructions of Jimmy Ray,

the Field Superintendent of Mitchell Engineering Company, their name was not put on any checks nor was Mitchell Engineering Company paid by your respondents."

The defendants averred further that Charles E. Melton did obtain releases from all other laborers and materialmen who had done work or furnished materials on the building and that they had paid all they owed to Hoffco Contractors, Inc., except $1,222.07, which they retained to insure the repairing of defects or adjustments in materials.

The Chancellor heard the case on oral testimony and after taking it under advisement expressed his opinion that by the action of Jimmy Ray, its field superintendent, the complainant "is permanently estopped from asserting its lien against the building here involved." The Court of Appeals affirmed the Chancellor, and we have granted certiorari and heard oral argument.

The complainant filed five assignments of error. We consider that the third presents the issue determinative of the case. It is:

"The Court erred in finding the defendants changed their position in reliance on any statement Jimmy Ray is alleged to have made."

The record shows that on August 8, 1969, Charles E. Melton, acting for all the defendants, contracted with Hoffco Contractors, Inc., to erect on their real estate a prefabricated steel building. The contract price was $40,000.00. On August 10, 1969, Hoffco contracted with Mitchell Engineering Company to furnish it the material for the building for $14,600.00 plus taxes. Thereafter Hoffco made two payments to Mitchell aggregating $888.95. On October 27, 1969, the defendants paid Hoffco $20,000.00 on the contract price of $40,000.00 leaving $20,000.00 due on the contract. Hoffco is insolvent and there remains unpaid to Mitchell the amount which is the subject of this suit.

In October, 1969, while the building was being erected, Jimmy Ray visited the site, noted a number of defects in the building, and authorized their correction. Later, as the construction progressed, and on Saturday, December 13, 1969, the defendant Charles E. Melton and Ray had a telephone conversation during which they agreed that Ray would meet Melton at the site on the fifteenth. Melton testifies that during this conversation he asked Ray if Hoffco had paid for the building and that he had replied that he did not know, that he then had asked Ray to go by the bookkeeping office, find out whether it had been paid for and let him know about it on Monday.

Mr. Melton's testimony about that part of the conversation with Ray on Monday, the fifteenth, and on which the defendants rely as an estoppel follows:

"Q. All right. Now, was there any other conversation with Mr. Ray on that occasion?

"A. As leaving, of course, I told him I appreciated him coming by and looking over the building. I didn't know all of what to expect of a metal building, in which he helped me considerably on that. And then the subcontractor did do a lot of the things, practically all of them, you know, the working part of it that he recommended. Then I asked him in the conversation, as he was leaving, as we were walking out, about did he find out if Hoffco had paid for the building, and as I recall he told me that he wasn't,— anyway, he couldn't tell me what it was, as to whether he paid for it or not. When he got to the car and had opened the car door, and he started to get in, and he raised up and said, 'Well,' he says—I asked him again if he would tell me if Hoffco had paid for the building, and he says, 'Well, I'm not supposed to, but I can tell you one thing though, I'm not supposed to, but it's not been paid for', and he says, 'We have a contract with Hoffco, we're looking to him for our money', or whatever he was looking for, they was looking to Hoffco for it. And I had nothing to worry about.

"Q. That's his words?

"A. As best I remember, and I think I remember correctly.

"Q. Did you rely on that?

"A. I relied on that."

The only other testimony about the conversation between Charles E. Melton and Jimmy Ray is that of Ray himself, and it does not controvert that of Mr. Melton in any important particular. The Chancellor and the Court of Appeals accepted the Melton version of what occurred and we accept their concurrent finding of fact.

By his testimony the defendant, Melton, showed that immediately after December 15, 1969, he, acting for himself and the other defendants, paid about $16,000.00 to various subcontractors taking from them waivers of their liens. After these payments there remained only $1,222.07 due on the Hoffco contract. Melton testified that this amount was no more than was necessary to make some necessary changes in the building.

██ Much of the discussion of the case involved the authority or apparent authority of Jimmy Ray, by his statements to Charles E. Melton in December, 1969, to bind Mitchell Engineering Company, the complainant. We consider, however, that the controlling issue is whether the statements made by Ray to Melton, assuming he had the authority to bind Mitchell, and Melton's reliance on the statements and his subsequent conduct in reliance thereon, had the effect of working an estoppel on Mitchell to assert its lien.

The defendants suffered no loss as the result of Ray's statements to Melton; before he made them the property had been encumbered by the liens of the several suppliers, including Mitchell, and there was due on the contract with Hoffco an amount substantially less than was required to discharge all the claims. After Melton's payments that deficit—that is, the difference between the total of all the amounts due and the amount due under the contract with Hoffco and available for their payment—remained at the same amount as before Melton made the payments. The defendants' prejudice resulted entirely from their having dealt with a contractor who became insolvent and unable to meet its obligations under the contract. It did not result from anything Ray said to Melton.

When the meeting between Melton and Ray took place on December 15th, the defendants had paid Hoffco about $22,600.00 and so owed it about $17,400.00 under the contract. Besides the $14,151.55 due Mitchell there were a number of other claims for work and materials, all secured by liens on the property. Melton paid these other claims and in each instance obtained the release of the lien. He discharged by these payments the balance due Hoffco under the contract.

Melton paid nothing at this time either to Hoffco or to Mitchell and Mitchell's claim of $14,151.55 remained outstanding.

There was no estoppel.

For there to be an estoppel it is necessary that the person estopped make a representation on which one acts to his prejudice.

"When it is said that a party is estopped from asserting the truth or claiming a right to which he is otherwise entitled, another must have acted to his prejudice. It is the same as having said that the party sought to be estopped has acted to his prejudice, and he has been placed in a worse condition by the conduct of that party." Rogers v. Colville, 145 Tenn. 650, 238 S.W. 80 [1921].

This rule was reaffirmed in Allen v. Neal, 217 Tenn. 181, 396 S.W.2d 344 [1965].

"It is fundamental that estoppel cannot be invoked without a showing of loss or injury resulting from a change of position by the party against whom the estoppel is urged." Hankins v. Waddell et al., 26 Tenn.App. 71, 167 S.W.2d 694 [1942].

Because the defendants in no wise were prejudiced by any statement that Ray made to Melton it is unnecessary that we consider whether he possessed authority to bind his employer by such statements. We therefore sustain the fifth assignment.

We reverse the Chancellor and the Court of Appeals and decree that the complainant recover the amount for which it sued and that such recovery be satisfied, if necessary, by the sale of the real estate described in the bill.

We decree all the costs against the defendants and remand the cause to the Chancery Court for such further proceedings as the Chancellor may order.

DYER, C. J., CRESON and HUMPHREYS, JJ., and MILES, Special Judge, concur.